[No. 3218–2.   Division Two.   March 13, 1978.]

FRED W. RHODES, *Appellant*, v. MAURICE GOULD,
ET AL, *Respondents.*

*George W. Young,* for appellant.

*Robert B. Gould,* for respondents.

REED, A.C.J.—Fred Rhodes, plaintiff, appeals from a judgment which denied his claim for rents and for costs and attorney's fees, and granted costs and attorney's fees to defendants Maurice and Esther Gould. The Goulds cross-appeal from the award of costs and fees, contending that the trial judge abused his discretion in refusing to award them the entire amount claimed.

Rhodes is the owner of a piece of property located in a residential section of Spokane, Washington. The premises had been used as a grocery store for many years, and in fact, had attained the status of a "nonconforming use" in this otherwise noncommercial neighborhood. In 1948, the property was leased to the Goulds for a term of 10 years; a second lease for 15 years was entered into in 1958. This second lease contains a clause expressly providing for the Goulds' continuing liability for rent in the event of a sublease or assignment. The lease also contains a provision which requires the unsuccessful party in any litigation to pay all costs and reasonable attorney's fees. The Goulds occupied the premises and operated a grocery store thereon until the fall of 1970 when, with Rhodes' consent, they assigned their interest in the lease to Mr. and Mrs. Jimmy Alford. The assignment document reiterated the obligation of the Goulds to perform all of the covenants of the original lease agreement.

Apparently because of the changing character of the neighborhood, the Alfords encountered financial difficulties and failed to pay rent from May to December of 1972. On December 7, 1972, the Alfords and Rhodes, without involving Goulds, entered into a supplemental agreement which extended the lease term for a period of 10 years and changed the rent from a set monthly sum to a percentage of gross sales. The agreement made no mention of the unpaid rent. The business continued to fail and the Alfords abandoned the premises in August of 1973 and were later adjudged bankrupt. Rhodes received a small settlement from the bankruptcy court. Until Alfords' discharge in bankruptcy Rhodes did not contact nor make any demand upon Goulds for unpaid rents.

In June of 1975, Rhodes initiated this lawsuit seeking to recover the rent owing from May of 1972 to September of 1974, minus monies received from the bankruptcy court. A nonjury trial was held on October 6, 1976. The trial judge found as a matter of law that by entering into the agreement of December 7, 1972, Rhodes necessarily waived his right to the rent then owning (May–December) and that such agreement also resulted in Rhodes' abandoning the lease with the Goulds. The trial judge, therefore, refused to award Rhodes any relief. Pursuant to the attorney's fees clause in the lease, the Goulds submitted an affidavit showing they had incurred fees and costs of $2,555.85 as of February 22, 1977. The trial judge apparently believed that the requested amount was unreasonable and granted the Goulds only $1,500 for their fees and costs.

Rhodes filed this appeal challenging the trial judge's conclusion that he had waived his right to collect the rent due from May to December of 1972. He does not question the trial court's determination that, by entering into the December 7 agreement with Alfords, he released the Goulds from any liability for rents falling due after December 7, 1972.

■ As his conclusion of law No. 7, the trial judge determined that by entering into the agreement with the

Alfords, Rhodes "waived his right for any delinquent rent." In his memorandum opinion, the trial judge indicated that he relied on the case of *Spotts v. Westlake Garage Co.,* 116 Wash. 255, 199 P. 294 (1921). He read *Spotts* as stating that, *as a matter of law,* a lessor waives his right to collect delinquent rent when he enters into a new agreement with the lessees' assignee which materially alters the lessees' obligations, *i.e.,* results in a new contract between the lessor and lessees' assignee. We do not read the case so broadly. In *Spotts,* the new agreement provided for rent payments of varying amounts; eight of the monthly payments were set at an amount significantly higher than that due under the original lease. The Supreme Court held that the modification was entered into in consideration of the fact that 9 months' rent was still owing and thus determined that the lessor waived his right to collect the delinquent rent. We are convinced that the *Spotts* court did not intend to establish a per se rule of waiver, but rather that the court merely found that the lessors *in that case* had, indeed, waived their right to collect delinquent rent.[1] Although *Spotts* dealt with the lessors' attempt to recover delinquent rent from the assignee, while we are here concerned with Rhodes' suit against the original lessees, we do not believe that the distinction is relevant to our analysis of the waiver issue.

■ Our interpretation of *Spotts* is consistent with our general understanding of the elements of a waiver. As stated in *Bowman v. Webster,* 44 Wn.2d 667, 669, 269 P.2d 960 (1954):

> A waiver is the intentional and voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right. It may result

---

[1] We question whether the facts in *Spotts v. Westlake Garage Co.,* 116 Wash. 255, 199 P. 294 (1921) gave rise to a true "waiver." Rather, it appears the delinquent rents were considered and absorbed into the higher monthly payments provided for in the new agreement. Thus, collection of the new agreement rental sums would result in collection of the delinquent rents.

from an express agreement or be inferred from circumstances indicating an intent to waive. It is a voluntary act which implies a choice, by the party, to dispense with something of value or to forego some advantage. . . . He must intend to relinquish such right, advantage, or benefit; *and his actions must be inconsistent with any other intention than to waive them.*

(Italics ours.) *See also Gorge Lumber Co. v. Brazier Lumber Co.,* 6 Wn. App. 327, 493 P.2d 782 (1972); *Lande v. South Kitsap School Dist. 402,* 2 Wn. App. 468, 469 P.2d 982 (1970). The existence of a waiver is to be determined by the trier of fact. *Bowman v. Webster, supra; Lande v. South Kitsap School Dist. 402, supra.* Although, as we have said, a waiver may be established by proof of an express agreement or may be implied from the circumstances of the case, the burden of proving a waiver is on the party asserting it. *Perez v. Perez,* 11 Wn. App. 429, 523 P.2d 455 (1974).

In the instant case, it is undisputed that Goulds presented no proof of an express waiver by Rhodes, and the only other conduct from which it could be argued that Rhodes intended to waive the delinquencies consisted of his delay in pursuing Goulds until he had exhausted his remedies against Alfords. The trial judge made no finding of fact concerning the allegations that Rhodes had waived his right to rent from May to December of 1972. In the absence of a finding of fact on a disputed matter, the appellate court will imply a finding against a party having the burden of proof on that issue. *LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 496 P.2d 343 (1972); *Perez v. Perez, supra.* We therefore find as a matter of fact that Rhodes did not intend to waive his right to the delinquent rent.[2]

[2]In any case, our examination of the record reveals no indication that Rhodes, in fact, intended to waive his right to delinquent rent by entering into the agreement with the Alfords. It is significant that at trial, Rhodes was never asked about the omission of any reference to delinquent rent in the agreement of December 1972; nor did Goulds present any testimony by Alfords either in person or by deposition. Also, Rhodes' continued insistance on written provisos against a release of the lessee–assignor militates strongly against a finding of waiver.

442

Our disposition of the delinquent rent issue makes it unnecessary to determine the questions raised by Goulds' cross appeal. Only a "successful" party is entitled to be reimbursed for fees and costs under the attorney's provision in the 1958 lease.

The judgment entered by the trial court is reversed insofar as it denied Rhodes recovery for the rent due and owing from May to December 1972, and insofar as it granted attorney's fees and costs to Goulds. The cause is remanded for a determination of (1) the rental delinquency plus accrued interest, and (2) Rhodes' reasonable attorney fees and costs, both in the trial court and for this appeal.

PETRIE and SOULE, JJ., concur.

Reconsideration denied June 14, 1978.

Review denied by Supreme Court November 3, 1978.